## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

| | |
|---|---|
| **OLUGBEMIGA ABIDEMI OKE** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **vs.** ) | |
| ) | **CASE NO.  8:23-cv-2558** |
| **PRONTOWASH, LLC, a Florida limited** ) | |
| **liability company; JONATHAN** ) | |
| **MUNSELL, an individual;** ) | |
| **PRONTOWASH S.A., a Panama** ) | |
| **corporation; SCOTT WYLER, an** ) | |
| **individual; SUCCESS SYSTEMS MGMT**) | |
| **LLC, a North Carolina limited liability** ) | |
| **company, BLUE MARBLE STRATEGIC**) | |
| **LLC, a Florida limited liability company,** ) | |
| **ACHILLES CAPITAL MANAGEMENT** ) | |
| **GROUP, LLC, a Florida limited liability** ) | |
| **company, PRONTOWASH** ) | |
| **MANAGEMENT, LLC,  a Florida** ) | |
| **limited liability company, PW HOUSTON**) | |
| **DOWNTOWN, LLC, a North Carolina** ) | |
| **limited liability company, STAN WEISS,** ) | |
| **an individual, and JAMES** ) | |
| **BORNAMANN, an individual** ) | |
| ) | |
| **Defendants.** ) | |

## <u>COMPLAINT</u>

**COMES NOW** Plaintiff Olugbemiga Abidemi Oke ("Mr. Oke") by and through his

undersigned counsel and hereby files this complaint asserting causes of action against Defendants

PRONTOWASH, LLC, JONATHAN MUNSELL, PRONTOWASH S.A., SCOTT WYLER,

SUCCESS SYSTEMS MGMT, LLC, BLUE MARBLE STRATEGIC, LLC, ACHILLES

CAPITAL MANAGEMENT GROUP, LLC, PRONTOWASH MANAGEMENT, LLC, PW

HOUSTON DOWNTOWN, LLC, STAN WEISS, and JAMES BORNAMANN and for his cause

of action states as follows:

1

**The Parties, Jurisdiction, and Venue**

1.      Plaintiff Olugbemiga Abidemi Oke is a non-resident Grenadian citizen and a resident of Nigeria.

2.      PRONTOWASH, LLC is a Florida limited liability company, which at all times relevant to these proceedings was doing business in Hillsborough County Florida.

3.      PRONTOWASH, LLC holds itself out as the franchisor of ProntoWash franchises in the United States.

4.      JONATHAN MUNSELL is a natural person who, upon information and belief, resides in North Carolina and is doing business in Hillsborough County Florida.

5.      JONATHAN MUNSELL is represented as the Chief Executive Officer, Owner, and Managing Member of Defendant ProntoWash, LLC and the owner of Defendant Success Systems MGMT, LLC.

6.      PRONTOWASH S.A. is a Panama Corporation in active concert with the other defendants and doing business in Hillsborough County Florida.

7.      PRONTOWASH S.A. is the owner of the ProntoWash service mark registered with the United States Patent and Trademark Office as Registration number 3255574.  In its Combined Declaration of Use and Application for Renewal of Registration of a Mark under Sections 8 & 9 filed on June 26, 2017 it certified to the USPTO that it was using the mark in commerce in the United States and, as evidence of its use it submitted a coupon listing three locations in Hillsborough County, Florida, and listing the website owned and maintained by Defendant ProntoWash, LLC at prontowash.com.

8.      Upon information and belief, PRONTOWASH S.A. is the owner of the ProntoWash brand and intellectual property and has granted master franchise rights for the United States to PRONTOWASH, LLC and JONATHAN MUNSELL.

9.      Upon information and belief ProntoWash LLC, Jonathan Munsell, James Bornamann, Stan Weiss, Scott Wyler, Blue Marble Strategic LLC, Achilles Capital Management Group, LLC, Success Systems Mgmt, LLC, and ProntoWash Management LLC are agents of PRONTOWASH S.A.

10.     SCOTT WYLER is a natural person who, upon information and belief, resides in Hillsborough County Florida.

11.     SCOTT WYLER is represented as the owner and managing member of Defendant ProntoWash, LLC.

12.     SUCCESS SYSTEMS MGMT, LLC, is a North Carolina limited liability company in active concert with the other defendants and is doing business in Hillsborough County Florida.

13.     SUCCESS SYSTEMS MGMT, LLC is the other party to the "term sheet" and the entity Jonathan Munsell represented to Plaintiff would hold Munsell's partnership interest in the partnership with Plaintiff.

14.     BLUE MARBLE STRATEGIC, LLC is a Florida limited liability company, which was, upon information and belief, administratively dissolved on September 24, 2021 and was doing business in Hillsborough County Florida.

15.     BLUE MARBLE STRATEGIC, LLC is represented in the franchise disclosure document provided to Plaintiff as an owner of ProntoWash, LLC.

16.     ACHILLES CAPITAL MANAGEMENT GROUP, LLC is a Florida limited liability company doing business in Hillsborough County Florida.

17.     ACHILLES CAPITAL MANAGEMENT GROUP, LLC

18.     PRONTOWASH MANAGEMENT, LLC is a Florida limited liability company which was, upon information and belief, administratively dissolved on June 30, 2022 and was doing business in Hillsborough County Florida.

19.     PRONTOWASH MANAGEMENT, LLC is represented in the franchise disclosure document provided to Mr. Oke as "the operating arm" of Franchisor ProntoWash LLC.

20.     PW HOUSTON DOWNTOWN, LLC is a North Carolina limited liability company in active concert with the other defendants and has been doing business in Hillsborough County Florida.

21.     PW HOUSTON DOWNTOWN, LLC, upon information and belief, is the entity formed by Defendant Jonathan Munsell to operate the Downtown Houston franchise in which Mr. Oke was purportedly gaining a 50% interest.

22.     STAN WEISS is a natural person in active concert with the other defendants and doing business in Hillsborough County Florida.

23.     STAN WEISS is listed on the ProntoWash website as the Chief Operating Officer of ProntoWash LLC and provided financial performance representations to Plaintiff.

24.     JAMES BORNAMANN is a natural person in active concert with the other defendants and doing business in Hillsborough County Florida.

25.     JAMES BORNAMANN, upon information and belief, is the Chief Financial Officer of ProntoWash, LLC and received, handled, and distributed Plaintiff's investment funds.

26.     Jurisdiction and Venue are appropriate in that the intentional conduct giving rise to the Complaint occurred, in large part, in Hillsborough County Florida, and most of the Defendants reside in or are doing business in Hillsborough County Florida.

27.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, 28 U.S.C. §1367, and 18 U.S.C. §1964 and 15 U.S.C.S. § 77l in that the claims are based, in large part on violation of federal statutes.

28.     The court has personal jurisdiction over each of the defendants who are conducting business in Florida.

29. Venue is appropriate in the Middle District of Florida in that many of the defendants reside in the Middle District of Florida.

**The Franchise Disclosures**

30. In 2022, Mr. Oke began exploring investment opportunities in the United States with hopes of obtaining an E-2 Investor Visa.

31. In the fall of 2022, Mr. Oke's broker introduced him to the ProntoWash franchise system.

32. Mr. Oke received from Jonathan Munsell a copy of the ProntoWash franchise disclosure document with an issuance date of April 24, 2022 (the "FDD"), a true and correct copy of which is attached hereto as **Exhibit A**. This was the only franchise disclosure document provided to Mr. Oke.

33. Although Mr. Oke did not sign a franchise agreement, the FDD represented that Florida law and venue would apply to a transaction involving ProntoWash.

34. Unbeknownst to Mr. Oke, the FDD was woefully inadequate and not in compliance with the Florida and FTC Franchise Rules and included major material omissions and misrepresentations.

35. For example, and without limitation as to other misrepresentations:

   a. The FDD only provided information about owning a single unit franchise and did not include any representations regarding partnerships or area development opportunities or joint venture/partnership opportunities.

   b. The FDD represented in Item 7 that the start-up costs ranged from $51,400 to $369,800. Mr. Munsell demanded $250,000 for a 50% interest.

c.  The FDD represents that a franchisee will pay $8,525 to $75,525 to ProntoWash LLC or its affiliate, but, the termsheet provided to my client required him to pay $250,000.

d.  The FDD indicates that the entity offering the franchise is ProntoWash, LLC, a Florida limited liability company, but three months before the transaction with Mr. Oke ProntoWash LLC was administratively dissolved.

e.  The FDD represents that ProntoWash Management LLC is the operating arm of the franchisor, but the FDD blatantly omits the fact that Mr. Munsell dissolved ProntoWash Management LLC on June 30, 2022 (6 months before this transaction) on the grounds that it was insolvent.

f.  The FDD acknowledges that ProntoWash LLC is a master franchisee but does not provide the information regarding the franchisor as required by the FTC Franchise Rule.

g.  The FDD Fraudulently Misrepresented the Officers and Directors.

h.  Item 2 does not contain the information required by the FTC Franchise Rule for any of the individuals disclosed – Woefully absent from the disclosure are the multitudes of companies in which Mr. Munsell and/or Mr. Swift serve as managers, many of which are now dissolved, indicating that these businesses failed.

i.  Item 2 only discloses Mr. Munsell and Mr. Swift as officers and directors of ProntoWash LLC, although the records for ProntoWash LLC with the Florida Secretary of State indicated that both Achilles Capital Management Group and Success Systems Mgmt are managers of ProntoWash, LLC.

j.  Item 2 does not provide any information regarding James Bornamann or Stan Weiss, though during the sales process they are held out as C-level officers of ProntoWash LLC.

k.  Table 3 of Item 20 of the FDD represents that there are 18 current franchises, when, in reality, most of these "franchise" entities are actually owned and/or managed by Mr. Munsell and/or Mr. Swift.

l.  Table 3 of Item 20 of the FDD represents that there are 18 current franchises, but would later represent that ProntoWash had 42 active franchisees with E2 Visas.

m.  The FDD does not provide the audited financials or any financials for either the Franchisor or the Master Franchisee.

**The Bait and Switch**

36.  Following Mr. Oke's review of the FDD, he engaged in conversations with Mr. Munsell via telephone and the internet.

37.  In October, 2022, Mr. Oke spoke with Jonathan Munsell via zoom regarding the ProntoWash franchise system.

38.  In this call, Mr. Munsell used bait and switch tactics to convince Mr. Oke not to purchase an independent franchise but, instead, to "partner" with him in the Houston area.

39.  Mr. Munsell promised Mr. Oke that by investing in a partnership Mr. Oke would not have to do anything and that Mr. Munsell would find the locations, build-out the locations, train the staff, and manage the locations.

40.  Mr. Munsell followed up with his push to get Mr. Oke to invest in a partnership in an email of October 27, 2022 wherein Mr. Munsell promised that the partnership would be an area

developer with 24 locations and would be a "passive" investment.  A copy of this email is attached hereto as **Exhibit B**.

41.     Mr. Oke never received an area development franchise disclosure document.

42.     Mr. Munsell directed Mr. Oke to the website at www.prontowash.com and to review the videos and materials on the website.

43.     Throughout the sales process, Jonathan Munsell repeatedly assured Mr. Oke that if he was not able to obtain an E-2 Visa, his funds would be returned to him, and he would have no other obligations.

44.     Mr. Oke reviewed information on the website www.prontowash.com which included promises that investment with ProntoWash was a "secure investment;" ProntoWash was a "healthy franchise;"  they had an "expedited via process:" had secured "45 successful visas;" and had "42 active owners with US visas."

45.     Mr. Oke reviewed the information on the website www.prontowash.com which included financial performance representations.   In a video titled "Jonathan Munsell, CEO, and Stan Weiss, COO, Talk Financials,"   Jonathan Munsell went through 5 year projection spreadsheets and showed how he expects the first year of the business to have $208,000 gross revenue per mobile unit, with 17% of that being net profit or EBITDA.  Mr. Munsell went on to manipulate the spreadsheet and show how if he was involved as an owner of the business, the first year, the business per mobile unit would have $450,000 in gross revenue with 43% of that being net profit or EBITDA.

46.     In this video, Stan Weiss promised that franchisees would never struggle with sales because if a franchisee said he was struggling building sales, Stan wouldn't just tell him how to build sales but would go out and find him sales.

47.     In this video, Jonathan Munsell also represented that he knew how to reduce the start-up costs to almost nothing and presented a proforma showing his start-up costs would be $81,045.

48.     Copies of screenshots of some of the representations obtained from the website www.prontowash.com, including the video discussed above, on which Mr. Oke relied are attached hereto as **Exhibit C**.

49.     Following the October 27, 2022 email Mr. Munsell and James Bornamann began high pressure sales tactics demanding that funds be transferred immediately or the opportunity to partner with Jonathan Munsell would not be available.

50.     In reliance upon Mr. Munsell's representations that Mr. Oke's investment would be secure and passive, his investment would be much more profitable if Mr. Munsell were involved in the ownership, and that the investment would be returned if there were a problem with the Visa, Mr. Oke caved to Mr. Munsell's high pressure sales tactics and executed a "Term Sheet" for the partnership in Houston, Texas on November 8, 2023.  A copy of the Term Sheet is attached hereto as **Exhibit D**.

51.     The Term Sheet required Mr. Oke to transfer $250,000 to Defendants.

52.     In November and December, Mr. Oke, pursuant to instructions from Mr. Munsell and James Bornamann, made a series of wire transfers to the account of "Success Systems MGMT LLC d/b/a ProntoWash" totaling $30,000.

53.     Upon information and belief, Mr. Munsell formed PW Houston Downtown, LLC to be the entity in which Mr. Oke was purportedly gaining an ownership interest.

54.     Upon information and belief, James Bornamann handled the receipt, transfer, and disbursement of the funds.

55.     Upon information and belief, all of the Defendants benefited from Mr. Oke's transfer of funds.

**The Request for Refund**

56.     In the last week of December, 2022, the E-2 Visa laws significantly changed, making it impossible for Mr. Oke, as a non-resident citizen of Grenada to obtain an E-2 Investor Visa.

57.     Mr. Oke and his franchise broker, Daniel Purim, promptly reached out to Mr. Munsell and advised him of the change in the franchise laws and that Mr. Oke would need to withdraw from the partnership and would not be making any further transfers.

58.     Jonathan Munsell's response was that he was sorry about the visa, the business was up and running, and he would refund the amounts Mr. Oke invested.

59.     In January, February, and March 2023, Mr. Oke patiently waited for his refund while periodically inquiring of the status.

60.     On March 30, 2023, Defendant Jonathan Munsell promised in writing to refund Mr. Oke's funds stating "The goal all along, since we had already started the project, with your original commitment was to replace you with another investor.  As mentioned above, I expect that to happen in the next couple weeks. Regardless of that, if for some reason that doesn't happen, I will personally take your 50% and return your funds from my own money.  My commitment on this will be if I do not have a closed deal by the 15th of April I will personally take your portion and pay you out by the end of April."  A copy of this email is attached hereto as **Exhibit E**.

61.     Upon information and belief, despite the refund promises made, Defendants had no intention of returning any funds to Mr. Oke.

62.     Instead, Jonathan Munsell and the other defendants were conspiring to continue running this pyramid investment scam and, upon information and belief, are continuing to dupe

unsuspecting foreign nationals out of hundreds of thousands of dollars while providing nothing to them in return.

**Uncovering the Scheme**

63.     When Mr. Munsell failed and refused to pay as promised in April 2023, Mr. Oke obtained counsel and began an investigation.

64.     On May 5, 2023 Mr. Oke sent Defendants correspondence offering to rescind the transaction and demanding a refund.  A copy of this correspondence is attached hereto as **Exhibit F**.

65.     Mr. Munsell responded agreeing to the rescission and refund but failed and refused to follow through.

66.      Plaintiff began an investigation and through the investigation, Mr. Oke learned that Defendants' pattern and practice is to hold themselves out as an international franchise system but ultimately dupe foreign nationals into giving them money with no control over how the funds were spent or what happened to the funds and then stop communicating.

67.     For example, on August 9, 2023, Mexico foreign national Haim Tbeili obtained a final judgment on his RICO claim and other causes of action upon eerily similar facts against Jonathan Munsell, ProntoWash LLC, and other defendants in United States District Court for the Southern District of Florida, case number 1:22-cv-21806-RNS.

68.     Mr. Oke has been contacted by other foreign naturals with the same story: "they were presented a ProntoWash franchise opportunity but were later convinced through fraudulent promises of increased success to turn several hundred thousand dollars over to Munsell and his other companies directly in a "partnership" that ultimately only resulted in Mr. Munsell ceasing communication shortly after receiving the funds.

69.     Due to above outlined online representations regarding the ability to procure visas, Defendants' abhorrent conduct is likely to continue to steal money from future investors.

70.     Upon information and belief, each of the defendants has benefited from the scheme outlined herein.

71.     Upon information and belief, some or all of the defendants are not following corporate formalities, are taking company funds for personal use, and co-mingling and transferring assets between multiple companies to avoid responsibility for their obligations.

## COUNT I – FRAUDULENT MISREPRESENTATION –

## All Defendants

72.     Plaintiff hereby restates, re-alleges and incorporates the above paragraphs as if fully set forth herein.

73.     Fraud occurs when a party makes a material misrepresentation with knowledge of its falsity (or recklessly without any knowledge of the truth) and as a positive assertion; the misrepresentation is made with the intention that it should be acted on by the other party; and the other party acts in reliance on the misrepresentation and thereby suffers injury.

74.     A misrepresentation is a false statement of fact, a promise of future performance made with intent not to perform as promised, or a failure to disclose when there was a duty to disclose.

75.     A principal is civilly liable for the tortious and fraudulent acts of his agents, regardless of the principal's knowledge of the tortious act.  See Am. Eagle Credit Corp. v. Select Holding, 865 F. Supp. 800, 814 (S.D. Fla. 1994); Gates v. Utsey, 177 So. 2d 486 (Fla. Dist. Ct. App. 1965); Van Engers v. Hickory House, Inc., 104 So. 2d 843 (Fla. Dist Ct. App. 1958); City of Green Cove Springs v. Donaldson, 348 F.2d 197 (5th Cir. 1965); West Florida Land Co. v.

Studebaker, 37 Fla. 28, 19 So. 176 (1896); Donner v. Morse Auto Rentals, Inc., 147 So. 2d 577 (Fla. Dist. Ct. App. 1962); Wheeler v. Baars, 33 Fla. 696, 15 So. 584 (1894).

76.     The actions of ProntoWash LLC, Jonathan Munsell, James Bornamann, Stan Weiss, PW Houston Downtown, LLC and Success Systems Mgmt, LLC, and constitute false or reckless statements of fact and failures to disclose in light of a duty to disclose.

77.     Jonathan Munsell, James Bornamann, Stan Weiss, Success Systems Mgmt, LLC Scott Wyler, Blue Marble Strategic LLC, Achilles Capital Management Group, LLC, and ProntoWash Management LLC, as officers and/or directors of ProntoWash LLC are liable for the false or reckless statements of fact and failures to disclose in light of a duty to disclose.

78.     PRONTOWASH S.A., as master franchisor, is liable for the false or reckless statements of fact and failures to disclose in light of a duty to disclose.

79.     As set forth above in detail, ProntoWash LLC, Jonathan Munsell, James Bornamann, Stan Weiss, PW Houston Downtown, LLC and Success Systems Mgmt, LLC made the misrepresentations to induce Mr. Oke to transfer money to them.

80.     The representations were false, and ProntoWash LLC, Jonathan Munsell, James Bornamann, Stan Weiss, PW Houston Downtown, LLC and Success Systems Mgmt, LLC knew the representations were false.

81.     The representations were crucial to Mr. Oke's decision to invest in ProntoWash.

82.     Mr. Oke was unaware that the representations were false at the time that he entered into the transaction.

83.     Mr. Oke relied on the representations as being true when he entered into the transaction.

84.     Mr. Oke was reasonably entitled to rely on the representations of Defendants.

85.     Mr. Oke has been injured by his reliance on the representations in that he entered into the transaction without receiving anything in return.

86.     Mr. Oke is entitled to rescind "term sheet" purchase and to obtain a refund, plus punitive damage, legal fees, costs, and interest.

**WHEREFORE** Plaintiff prays that this Court enter judgment in his favor and for an award of monetary damages in an amount to be determined at trial.  Plaintiffs also prays for his reasonable attorneys' fees and costs incurred herein, for statutory treble damages, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT II – SECURITIES FRAUD – 15 U.S.C.S. § 77l – All Defendants

87.     Plaintiff hereby restates, re-alleges and incorporates the above paragraphs 1-85 as if fully set forth herein.

88.     The Securities Act of 1933 prohibits the sale of unregistered securities and the sale of securities via any fraudulent misrepresentation in interstate commerce.

89.     As set forth above, Defendants promised to provide Mr. Oke with a 50% ownership interest in an entity that would own and operate PowerWash franchise units.

90.     Defendants obtained the investment from Mr. Oke by means of fraudulent misrepresentations in interstate commerce.

91.     Upon information and belief, the security was not registered with the SEC or with any state and is not exempt from registration.

92.     Pursuant to the statute, Plaintiff is entitled to rescission, damages in an amount to be proven at trial, attorneys' fees, and costs.

**WHEREFORE** Plaintiff prays that this Court enter judgment in his favor and for an award of monetary damages in an amount to be determined at trial.  Plaintiffs also prays for his reasonable

attorneys' fees and costs incurred herein, for statutory damages, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT III – FLORIDA SECURITIES AND INVESTOR PROTECTION ACT, FLA. STAT. § 517.011 et. seq. – All Defendants

93.     Plaintiff hereby restates, re-alleges and incorporates the above paragraphs 1-91 as if fully set forth herein.

94.     It is unlawful and a violation of Florida Securities and Investor Protection Act, Fla. Stat. § 517.011 et. seq. for any person to sell or offer to sell a security within Florida unless the security is exempt, a federal covered security, or registered or to sell a security via any fraudulent misrepresentation.

95.     As set forth in detail above, Defendants sold Mr. Oke a fifty percent (50%) interest in an entity that would own and operate ProntoWash franchises of the Florida based ProntoWash franchise system.

96.     Upon information and belief, the security was not registered with the SEC or with the State of Florida and is not exempt from registration.

97.     Defendants obtained the investment from Mr. Oke by means of fraudulent misrepresentations as detailed above.

98.     Pursuant to the  statute, Plaintiff is entitled to rescission, damages in an amount to be proven at trial, attorneys' fees, and costs.

**WHEREFORE** Plaintiff prays that this Court enter judgment in his favor and for an award of monetary damages in an amount to be determined at trial.  Plaintiffs also prays for his reasonable attorneys' fees and costs incurred herein, for statutory damages, and for such other and further relief as this Court deems just and proper under the circumstances.

**COUNT IV – THE SECURITIES ACT OF TEXAS, Tex. Gov't Code § 4001.001  et. seq.–**

**All Defendants**

99.     Plaintiff hereby restates, re-alleges and incorporates the above paragraphs 1-91 as if fully set forth herein.

100.    It is unlawful and a violation of The Securities Act of Texas for any person to sell or offer to sell a security within Texas unless the security is exempt or registered and to sell a security via fraud or misrepresentation.

101.    As set forth in detail above, Defendants sold Mr. Oke a fifty percent (50%) interest in an entity that would own and operate ProntoWash franchise units in Houston, Texas.

102.    Upon information and belief, the security was not registered with the SEC or with the State of Texas and is not exempt from registration.

103.    Defendants obtained the investment from Mr. Oke by means of fraudulent misrepresentations as detailed above.

104.    Pursuant to the statute, Plaintiff is entitled to rescission, damages in an amount to be proven at trial, attorneys' fees, and costs.

**WHEREFORE** Plaintiff prays that this Court enter judgment in his favor and for an award of monetary damages in an amount to be determined at trial.  Plaintiffs also prays for his reasonable attorneys' fees and costs incurred herein, for statutory damages, and for such other and further relief as this Court deems just and proper under the circumstances.

**COUNT V – THE NORTH CAROLINA SECURITIES ACT, N.C. Gen. Stat. § 78A-1 et.**

**seq.– All Defendants**

105.    Plaintiff hereby restates, re-alleges and incorporates the above paragraphs 1-91 as if fully set forth herein.

106.    It is unlawful and a violation of The North Carolina Securities Act for any person to sell or offer to sell a security within North Carolina unless the security is exempt or registered and to sell a security via fraud or misrepresentation.

107.    As set forth in detail above, Defendants sold Mr. Oke a fifty percent (50%) interest in an entity that would own and operate ProntoWash franchise units.

108.    Upon information and belief, the entity in which Mr. Oke was acquiring an interest was a North Carolina entity.

109.    Upon information and belief, some or all of the representations were made from North Carolina.

110.    Upon information and belief, the security was not registered with the SEC or with the State of North Carolina and is not exempt from registration.

111.    Defendants obtained the investment from Mr. Oke by means of fraudulent misrepresentations as detailed above.

112.    Pursuant to the statute, Plaintiff is entitled to rescission, damages in an amount to be proven at trial, attorneys' fees, and costs.

**WHEREFORE** Plaintiff prays that this Court enter judgment in his favor and for an award of monetary damages in an amount to be determined at trial.  Plaintiffs also prays for his reasonable attorneys' fees and costs incurred herein, for statutory damages, and for such other and further relief as this Court deems just and proper under the circumstances.

### COUNT VI – RICO – 18 U.S.C. § 1962(a) – All Defendants

113.    Plaintiff hereby restates, re-alleges, and incorporates paragraphs 1-91 above as if fully set forth herein.

114.    All of the defendants and each of them have violated the civil provisions of the RICO statute as described more fully below.

115.   Under 18 U.S.C. § 1964 (c), "Any person injured in his business or property by reason of a violation of Section 1962 of this chapter may sue therefor . . . and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

116.   Under 18 U.S.C. § 1962(a), "It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

117.   The RICO statute defines a "person" as "any individual or entity capable of holding a legal or beneficial interest in a property."

118.   Each of the Defendants is a "person" as defined by the statute.

119.   The RICO statute defines the term "enterprise" to include "any individual, partnership, corporate, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).

120.   Each of the entity Defendants constitutes an "enterprise" as the term is defined in the RICO statute in that the Defendants used the entity Defendants to accomplish their conspiracy.

121.   Additionally, the association of Defendants constitutes an "enterprise" as the term is defined in the RICO statute.

122.   The Defendants are joined together in an association-in-fact to accomplish the goals of their conspiracy, and that group of all Defendants joined together constitutes an enterprise as that term is defined in the RICO statute.

123.    The goal of Defendants' enterprise is to obtain the assets, customer lists, and credit of print companies, max out the credit of the target company, take all cash and assets for personal gain and use, default on all obligations, and leave the Sellers and financiers with all the liabilities.

124.    The Defendants are joined together as an association-in-fact for the purpose of furthering the goals of their enterprise.

125.    Defendants use a pattern of racketeering activity to accomplish the fraudulent goals of the enterprise.

126.    Section 1961(1) of RICO defines "racketeering activity" to include any of the enumerated predicate acts listed in § 1961(1).  Included in the list of predicate acts are wire fraud and securities fraud.

127.    Defendants have engaged in wire fraud.

128.    Under 18 U.S.C. § 1343, wire fraud is defined as follows:

129.    Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits, or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such a scheme or artifice . . .

130.    The Defendants used wires, as the term is defined above, to further their conspiracy, transferring funds via wire transfer, and communicating with Plaintiff, brokers, franchisees and others through wire.

131.    Defendants have engaged in securities fraud.

132.    Defendants sold Plaintiff an interest in an unregistered security.

133.    Defendants formed an enterprise and engaged in activity to steal the income and assets of print shops in multiple states by making misrepresentations and promises to the Sellers and financiers and then leaving the sellers and financiers with all of the debt and obligations.

134.    Upon information and belief, each of the individual Defendants knowingly joined the conspiracy and engaged in activity to further the conspiracy.

135.    Defendants, jointly and severally, have colluded and engaged in fraudulent and illegal acts set forth above, which took place in interstate commerce and which constituted acts of wire fraud, mail fraud, bank fraud, and extortion.

136.    Defendants' fraudulent conduct and pattern and practice of fraud has been repeated with foreign nationals interested in investing in a franchise to obtain an E2 investor Visa.

137.    The activities of the enterprise of Defendants herein constitute a pattern of racketeering activity in that the activities were both continuous and related: the false acts were all intended to induce many foreign nationals to each turn over several hundred thousand dollars to Jonathan Munsell and his related entities with the promise of profitable, secure car wash franchises.

138.    Defendants and each of them have received income, assets, and benefits from the enterprise.

139.    Defendants used the income, assets, reputation and benefits of the companies acquired to further their scheme and spread the fraud to acquire other individuals in a similar manner.

140.    Each of the Defendants has derived income from their pattern of racketeering activity and has invested that income or the proceeds of the income in the entity defendants.

141.    Each of the Defendants has derived income from their pattern of racketeering activity and has invested that income or the proceeds of the income in the enterprise.

142.    Defendants' conduct has been ongoing for a substantial period of time.

143.    Defendants' conduct is systematic, ongoing and likely to be repeated.

144.    The victims of Defendants' conduct are similar victims, foreign nationals looking to invest in a franchise to obtain an E-2 Investor Visa.

145.    Under the statute, Plaintiff is entitled to rescission, damages in an amount to be proven at trial, treble damages, attorneys' fees, and costs.

**WHEREFORE** Plaintiff prays for an award of monetary damages in an amount to be determined at trial.  Plaintiff also prays for his statutory reasonable attorneys' fees and costs incurred herein, for statutory treble damages, and for such other and further relief as this Court deems just and proper under the circumstances.

### COUNT VII – RICO – 18 U.S.C. § 1962(b) – All Defendants

146.    Plaintiff hereby restates, re-alleges and incorporates paragraphs 1-91 and 112-144 above as if fully set forth herein.

147.    All of the defendants and each of them have violated the civil provisions of the RICO statute as described more fully below.

148.    Under 18 U.S.C. § 1962(b), "It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

149.    Upon information and belief, each of the individual, non-entity defendants has acquired an interest in some or all of the entity defendants.

150.    Upon information and belief, each of the individual, non-entity defendants has acquired an interest in the enterprise.

151.    Upon information and belief, the entity defendants have each acquired an interest in some of the other entities.

152.    Upon information and belief, each of the entity defendants has acquired an interest in the enterprise.

153.    Defendants and each of them have received income, assets, and benefits from the enterprise.

154.    Defendants used the income, assets, reputation, and benefits of the companies acquired to further their scheme and spread the fraud to acquire other companies in a similar manner.

155.    Under the statute, Plaintiff is entitled to rescission, damages in an amount to be proven at trial, treble damages, attorneys' fees, and costs.

**WHEREFORE** Plaintiff prays for an award of monetary damages in an amount to be determined at trial.  Plaintiff also prays for his statutory reasonable attorneys' fees and costs incurred herein, for statutory treble damages, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT VIII – RICO – 18 U.S.C. § 1962(c) – All Defendants

156.    Plaintiffs hereby restate, re-allege and incorporate paragraphs 1-91 and 112-144 above as if fully set forth herein.

157.    All of the defendants and each of them have violated the civil provisions of the RICO statute as described more fully below.

158.    Under 18 U.S.C. § 1962(c), "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

22

159.    Each of the Defendants conducts or participates directly or indirectly in the conduct of the enterprise's affairs.

160.    Upon information and belief, each of the individual Defendants knowingly joined the conspiracy and engaged in activity to further the conspiracy.

161.    Defendants, jointly and severally, have colluded and engaged in fraudulent and illegal acts set forth above, which took place in interstate commerce, and which constituted acts of wire fraud and securities fraud.

162.    Defendants and each of them have received income, assets, and benefits from the enterprise.

163.    Defendants used the income, assets, reputation, and benefits of the companies acquired to further their scheme and spread the fraud to acquire other companies in a similar manner.

164.    Under the statute, Plaintiff is entitled to rescission, damages in an amount to be proven at trial, treble damages, attorneys' fees, and costs.

**WHEREFORE** Plaintiff prays for an award of monetary damages in an amount to be determined at trial.  Plaintiff also prays for his reasonable attorneys' fees and costs pursuant to the statute, for statutory treble damages, and for such other and further relief as this Court deems just and proper under the circumstances.

### <u>COUNT IX – UNJUST ENRICHMENT – All Defendants</u>

165.    Plaintiffs hereby restates, re-alleges, and incorporates paragraphs 1-91 as if fully set forth herein.

166.    Defendants have received the $30,000 belonging to Plaintiff without providing any compensation to Plaintiff.

167.    Defendants have further used these funds to further their modus operandi and enter into similar transactions with other persons and companies.

168.    Plaintiff has received no compensation or any thing of value.

169.    Defendants, jointly and severally, have retained the benefits of Plaintiff's funds.

170.    Defendants' acceptance and retention of these benefits is unjust because Defendants have not compensated Plaintiff for them.

171.    Allowing Defendants to retain the amount the benefits would inequitable.

**WHEREFORE** Plaintiff prays that this Court enter judgment in his favor and against Defendants, jointly and severally, disgorge Defendants of their unjust enrichment, and award Plaintiff damages in an amount to be proven at trial, for costs incurred herein and for such other and further relief this Court deems just and proper under the circumstances.

<u>**COUNT X – VIOLATION OF THE FLORIDA FRANCHISE**</u>

<u>**MISREPRESENTATION ACT, Fla. Stat. § 817.416 et. seq.– All Defendants**</u>

172.    Plaintiff hereby restates, re-alleges, and incorporates paragraphs 1-91 above as if fully set forth herein.

173.    It is a violation of the Florida Franchise Misrepresentation Act for any person to intentionally misrepresent the prospects for success or the total investment needed for a franchise.

174.    As detailed above, Defendants obtained Mr. Oke's investment in a ProntoWash franchise by misrepresenting the investment needed and the prospects for success.

175.    Under the statute, Plaintiff is entitled to rescission, damages in an amount to be proven at trial, attorneys' fees, and costs.

**WHEREFORE** Plaintiff prays that this Court enter judgment in his favor and against Defendants, jointly and severally, and award Plaintiff damages in an amount to be proven at trial,

attorneys' fees, for costs incurred herein and for such other and further relief this Court deems just and proper under the circumstances.

## COUNT XI – VIOLATION OF THE FLORIDA SALE OF BUSINESS OPPORTUNITIES ACT, Fla. Stat. § 559.80 et. seq.– All Defendants

176.     Plaintiff hereby restates, re-alleges, and incorporates paragraphs 1-91 above as if fully set forth herein.

177.     It is a violation of the Florida Sale of Business Opportunities Act for any person to misrepresent the known required total investment for such business opportunity, the amount of profits a franchisee can expect, or any material fact or create a false or misleading impression in the sale of a business opportunity.

178.     As detailed above, Defendants obtained Mr. Oke's investment in a ProntoWash franchise by misrepresenting the investment needed and by making numerous material misrepresentations.

179.     Under the statute, Plaintiff is entitled to rescission, damages in an amount to be proven at trial, attorneys' fees, and costs.

**WHEREFORE** Plaintiff prays that this Court enter judgment in his favor and against Defendants, jointly and severally, and award Plaintiff damages in an amount to be proven at trial, attorneys' fees, for costs incurred herein and for such other and further relief this Court deems just and proper under the circumstances.

## COUNT XII – VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA) – All Defendants

180.     Plaintiff hereby restates, re-alleges, and incorporates paragraphs 1-91 and 171-178 above as if fully set forth herein.

181.   Defendants' actions, as detailed above, are unfair and deceptive trade practices in violation of FDUTPA, Florida Statute § 501.201, et seq.

182.   Plaintiff has been damaged by Defendants' violations, as detailed above.

183.   Accordingly, Plaintiff is entitled to a declaratory judgment that Defendants' conduct violates the Florida Deceptive and Unfair Trade Practices Act.

184.   Pursuant to the statute, Plaintiff is also entitled to rescind the agreement and recover damages, punitive damages, attorneys' fees, and court costs.

**WHEREFORE** Plaintiff prays that this Court enter judgment in his favor and for an award of monetary damages in an amount to be determined at trial.  Plaintiff also prays for his reasonable attorneys' fees and costs incurred herein, for punitive damages, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT XIII – VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT (TDTPCPA) – All Defendants

185.   Plaintiff hereby restate, re-allege and incorporate paragraphs 1-91 above as if fully set forth herein.

186.   Defendants' actions, as detailed above, are unfair and deceptive trade practices in violation of TDTPCPA, Tex. Bus. & Com. Code § 17.41 et. seq.

187.   Plaintiff has been damaged by Defendants' violations, as detailed above.

188.   Accordingly, Plaintiff is entitled to a declaratory judgment that Defendants' conduct violates the Texas Deceptive Trade Practices-Consumer Protection Act.

189.   Pursuant to the statute, Plaintiff is also entitled to rescind the agreement and recover damages, punitive damages, attorneys' fees, and court costs.

**WHEREFORE** Plaintiff prays that this Court enter judgment in his favor and for an award of monetary damages in an amount to be determined at trial.  Plaintiff also prays for his reasonable

attorneys' fees and costs incurred herein, for punitive damages, and for such other and further relief as this Court deems just and proper under the circumstances.

**COUNT XIV – VIOLATION OF THE NORTH CAROLINA SALE OF BUSINESS OPPORTUNITIES ACT, N.C. Gen. Stat. § 66-94 et. seq.et. – All Defendants**

190.    Plaintiff hereby restates, re-alleges, and incorporates paragraphs 1-91 above as if fully set forth herein.

191.    It is a violation of the North Carolina Sale of Business Opportunities Act for any person to use any untrue or misleading statements in the sale of a business opportunity or to sell a business opportunity.

192.    As detailed above, Defendants obtained Mr. Oke's investment in a ProntoWash franchise by making numerous material misrepresentations.

193.    Under the statute, Plaintiff is entitled to rescission, damages in an amount to be proven at trial, attorneys' fees, and costs.

**WHEREFORE** Plaintiff prays that this Court enter judgment in his favor and against Defendants, jointly and severally, and award Plaintiff damages in an amount to be proven at trial, attorneys' fees, for costs incurred herein and for such other and further relief this Court deems just and proper under the circumstances.

**COUNT XV – VIOLATION OF THE NORTH CAROLINA CONSUMER PROTECTION ACT, N.C. Gen. Stat. § 75-1.1 - All Defendants**

194.    Plaintiff hereby restate, re-allege and incorporate paragraphs 1-91 and 190-193 above as if fully set forth herein.

195.    Defendants' actions, as detailed above, are unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce.

196.    Plaintiff has been damaged by Defendants' violations, as detailed above.

197.    Accordingly, Plaintiff is entitled to a declaratory judgment that Defendants' conduct violates the North Carolina Consumer Protection Act.

198.    Pursuant to the statute, Plaintiff is also entitled to rescind the agreement and recover damages, statutory treble damages, attorneys' fees, and court costs.

**WHEREFORE** Plaintiff prays that this Court enter judgment in his favor and for an award of monetary damages in an amount to be determined at trial.  Plaintiff also prays for his reasonable attorneys' fees and costs incurred herein, for punitive damages, and for such other and further relief as this Court deems just and proper under the circumstances.

Respectfully submitted November 8, 2023.


/s/ Mary M. Clapp, Esq.
Mary M. Clapp, FBN #0962341
Delafran, LLC
mary@delafran.com
2409 Lakewood Ranch Blvd. N.
Unit 2219
Sarasota, FL  34240
COUNSEL FOR PLAINTIFF